UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BELINDA J. ELDRIDGE,

       Plaintiff,                          CIVIL ACTION NO. 06-11811

       v.                                  DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF                  MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

      This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits.  For the reasons discussed in this Report, it is recommended that judgment be granted for the defendant and the decision denying benefits be affirmed.

### II. Background

      Plaintiff, a resident of Kingston, Michigan in the Northern Division, filed this action *in pro per and in forma pauperis*.   A scheduling order was entered in this case requiring plaintiff to file her brief by August 4, 2006 and defendant to file its brief by September 5, 2006.  Plaintiff did not file her brief as required and the court clerk erroneously advised the United States

Attorney's Office that they did not need to file theirs. Although neither party has filed a brief, pursuant to the terms of the scheduling order, the case is deemed submitted on the merits.[1]

Plaintiff's application for disability benefits and supplemental security income benefits (SSI) alleged an onset date of October 1, 1998. Plaintiff, born in January, 1966 and 38 at the time of the ALJ's decision, is a "younger individual" under the Social Security Act. She has a high school education with some training in child care. She has past part-time work at a grocery store and home-based sales of Princess Crystal. (Tr. 429-432.) Her alleged impairments include back problems with muscle cramps and pain, leg problems, carpal tunnel syndrome for which she receives injections, and tendinitis of the right shoulder. (Complaint, page 3.) Following the initial denial of her application, plaintiff had a hearing before an ALJ at which hearing she was represented by attorney John Wildeboer. The ALJ considered the medical evidence, plaintiff's testimony and that of a vocational expert, and found that plaintiff had not engaged in substantial gainful activity since her alleged onset date.[2] The ALJ further found that plaintiff was unable to perform her past work but retained the ability to perform a restricted range of light unskilled work which existed in significant numbers. Thus, she was not entitled to benefits.

---

[1]Following plaintiff's failure to file a brief, the U.S. Attorney's office called chambers. The court clerk erroneously advised the U.S. Attorney's office that the case was on "hold" due to plaintiff's failure to file her brief, and that a show cause order would be entered with respect to plaintiff's failure to file her brief. Consequently, the government did not file its brief. The Scheduling Order provided for review upon the merits whether or not briefs were filed. Thus, this Report and Recommendation is prepared based on plaintiff's complaint and the government's answer with transcript. The lack of a brief is not held against either party.

[2]From the medical records, it appears that plaintiff did continue to work part-time after her onset date. She requested many work excuses from her physicians.

In her complaint, plaintiff alleges that she wants the ALJ to re-evaluate her case and that she was dissatisfied with her lawyer's representation.[3] The transcript of the proceedings before the agency shows that the ALJ reviewed the medical records and found that plaintiff has severe impairments of stage II endometriosis, lumbar pain with radiculopathy, bilateral sacroiliac joint syndrome, carpal tunnel syndrome, and history of headaches but that these were not disabling.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

---

[3]Plaintiff is entitled to a full and fair hearing before the agency which she received. Attorney grievance issues are beyond the scope of this judicial review.

A five-step process is used to evaluate Social Security Disability claims, including SSI claims. See 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she had done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at the fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. 405(g), which provides in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of

evidence but less than a preponderance of the evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681.  Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  Key, 109 F.3d at 273.

**IV.  Analysis**

Plaintiff's request that the ALJ re-evaluate her case is interpreted to be a claim that the decision is not supported by substantial evidence.  Plaintiff alleges that she is unable to work due to pain and the side effects of her medication.  (Complaint page 2.)   She claims that she has been seeing Dr. Khan since 1997, and that the ALJ's finding that she exaggerated her complaints and was not in pain during the hearing was beyond his expertise because he is not in her shoes.  Complaint paragraph 4.  Plaintiff testified at the hearing that she cannot work because of cramping and spasm in her lumbar spine, back pain resulting from a 1997 auto accident, and leg pain radiating from the back.  Her pain is made worse by standing, lifting, and bending.  She takes Lortabs and Naprosyn for pain, but these medications make her drowsy.  Reports of her daily activities show that she shops, performs light household chores and visits with friends. (See, e.g Tr. 88-93.)

**A.  Medical Evidence Prior to Onset Date**

Plaintiff first alleges that the ALJ did not discuss the medical evidence from 1997 or before.  However, plaintiff has alleged disability only since October, 1998.  The ALJ found that she did have back pain and other impairments as of that date.  Medical records prior to that date

have little value but are included in the file which the ALJ reviewed. In this case, they indicate that plaintiff was seen by Dr. Rendziperis from at least July, 1997 (Tr. 252) and Dr. Khan from December, 1997 (Tr. 255). This is consistent with her claim. Although numerous prescription slips indicate that she has pain and is under a doctor's care, they do not specify the doctor's reasoning or the treatment. No objective testing results are contained on these slips nor are there any findings which support the conclusions.

There are also prescription slips indicating that plaintiff was off work and attending a work-hardening program. *Id*. When seen in the physician's office in August, 1997, she was given a Return To Work date of August 18, 1997. (Tr. 253.) But, in September, 1997, the doctor indicated that she could not work as a result of back pain after the auto accident. (Tr. 254.)

In June, 1997, Dr. Rendziperis, D.O., wrote a letter regarding his treatment to Allstate Insurance, opining that plaintiff's condition was due to the auto accident in March, 1997. (Tr. 310-11.) In that, he reports that x-rays, MRI, and other objective testing were all negative. (Tr. 310.) The other medical records pre-dating plaintiff's onset date show that she was treated in 1995 for headaches for which she received medication. It was believed by the physician that these were associated with consumptions of large amounts of caffeinated sodas. (Tr. 274.)

### B. ALJ's Evaluation of Pain

Plaintiff next claims the ALJ did not properly evaluate her complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367

(6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on a plaintiff's subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

As a review of the evidence shows, plaintiff has not demonstrated an underlying medical condition that is of such a severity to reasonably give rise to the pain alleged. Objective testing does not support a condition associated with disabling pain. Her EMG studies in August 1997 and 2000 were normal. (Tr. 298, 310.) Her x-rays and CT scans have been negative. At many doctor's appointments, she reported that her pain had resolved. (See, e.g. Tr. 300, 307.) On several occasions, she was advised to return to work without restrictions. (Tr. 308.)

Contained in the record are several pain questionnaires and daily activity reports. (Tr. 84-98.) Plaintiff states that her pain began in March, 1997, following a traffic accident where she was rear-ended and injured her back. She reports her pain as constant in her low back and radiates to her right leg and foot. She reports back spasms. Her pain is relieved by spinal injections and rest. (Tr. 84-85.) She can walk but has never measured how far. Her medications–Lortabs, Baclofen, and Naprosyn–cause her to be drowsy. She can lift and carry 15 pounds, sit no longer than 2.5 hours at a time, and no bending below the waist. She does not use any assistive device to walk. (Tr. 85.) In reports of her daily activity by her mother, it is noted that she does laundry, vacuuming, and dishes several times a week. Plaintiff likes to work on puzzles, crosswords, do cross stitching, reading, and watching movies and game shows. She does not visit with friends when she takes her medication. (Tr. 87.) She gets along with everyone. Plaintiff does not drive and has trouble walking any distance. (Tr. 89.) She spends six to seven hours daily watching television. (Tr. 90.) When her pain is bad, her mother will help with chores. (Tr. 91.) Plaintiff reports that she has difficulty walking when she shops. (Tr. 94.)

The court has conducted a thorough review of the medical evidence. Plaintiff's medical records show that she was seen frequently by a variety of doctors. Her medical needs are usually handled through emergency room visits or hospital outpatient facilities. She was seen many times at the Marlette Community Hospital emergency room for treatment of various conditions and later also at Pontiac Osteopathic Hospital (POH) and POH outpatient services, and Hill and Dale General Hospital. Frequently, these visits involve Dr. Rendziperis and Dr. Khan.

On October 23, 1998, she was seen at Marlette Hospital's emergency room complaining of severe headaches and a sinus infection. Chest x-rays were negative but sinus x-rays showed acute maxillary sinusitis. She was discharged on Rocephin, Nubain, Zephrex LA, Lorabid, Tylenol #3 and #40. (Tr. 176-177.) She also reported headaches February 3, 1999 and July 8, 1999. Objective testing was negative. (Tr. 169-170, 172, 189.) In December, 1998, she presented at the ER with complaints of toothache and jaw pain after her teeth were pulled the day before. She was placed on a bed in a supine position and given 100 mg of Demerol intravenously followed by 20 mg of Nubain. Her condition was improved and she was discharged with Tylenol #3. (Tr. 174-175.) In March, 1999, she was seen for a swollen right thumb. X-rays were negative. (Tr. 171.) In August, 1999, plaintiff was seen with a two day history of left shoulder pain, diagnosed as tendinitis. X-rays were normal. (Tr. 168, 188.) Plaintiff was also treated at a pain clinic. In November, 1999, she received epidural steroid injections for lumbar pain.

In December, 1999, she was seen twice at the hospital for upper respiratory infection. She first came in and was diagnosed with upper respiratory infection and then, two days later, she was seen for chest pain following bronchitis. A review of systems was negative. She was given a work excuse and prescribed Toradol. (Tr. 165, 167.)

In May, 2000, plaintiff reported to the ER physician numbness and tingling of her right arm as a result of her work in the bakery/deli. X-rays showed no fracture, dislocation, or spurring. (Tr. 186.) She was prescribed Naprosyn 500 mg tablets. (Tr. 162-163.)

In June, 2000, she was seen at the ER for hemorrhoids. (Tr. 159.) X-rays were normal. (Tr. 185.) In June, 2000, plaintiff was seen at Hill and Dales General Hospital with pain in the right upper extremity. Dr. Jilani, M.D., noted right nerve irritation. She was placed on restrictions of no lifting over ten to 15 pounds and no constant flexion of the right upper extremity. EMG testing of August 1, 2000, confirmed no evidence of right ulnar neuropathy, right medial neuropathy or cervical radiculopathy. Dr. Jilani noted in September, 2000, that plaintiff could work but without repetitive use of the right hand or lifting over ten pounds.

In September, 2000, she came to the ER with her mother. Plaintiff complained of foot pain and requested an excuse for work. X-rays showed no evidence of fracture or dislocation. (Tr. 156, 184.) In December, 2000, she complained of tendinitis of the right shoulder and was prescribed Darvocet by the Marlette ER doctor. (Tr. 154.) X-rays of her right shoulder in December, 2000, were negative. (Tr. 183.)

In March, 2001, she was seen complaining of a three day headache and right ear pain. She was alert, no fever, blood pressure 130/80. She was given two tablets of Tylenol #3, two more to take home, a prescription for twenty more, and antibiotics. (Tr. 151-152.)

In August 2001, she was seen again at Marlette's ER with an itch on her skin and a rash, thought to be from bug bites or dermatitis related to medication. Her blood pressure was 123/56, pulse 69, respirations 16, and temperature 98.5. She was oriented, had regular heart rate, and no lung problems. The final diagnosis was acute dermatitis. She was given intravenous Zantac, Solu-medrol and "some Demerol" for a headache that she rated as a 5 out of ten. (Tr. 149-150.) She underwent stress and resting heart scans on August 20, 2001, both of which were normal.

She also had a normal chest x-ray, and normal abdomen and paranasal sinus scans. (Tr. 178-181.)

This stress testing was performed using the Bruce protocol. The exercise stress test was negative. (Tr. 224-225.)

In August, 2001, she reported abdominal pain and a CT of the abdomen was done. This was normal. (Tr. 230.) In October, 2001, a pelvic ultrasound showed a 1.3 cm right ovarian cyst. (Tr. 226.) Plaintiff received additional epidural steroid injections for lumbar radiculopathy and bilateral sacroiliac joint syndrome in October, 2001, and December 21, 2001. (Tr. 161.) She had tonsillitis in October, 2001. (Tr. 198-201.)

In March and December, 2001, plaintiff was given "To Whom It May Concern" forms indicating her restrictions and a diagnosis. (Tr. 204, 205.) Plaintiff's treating physician Dr. Arthur Rendziperis, D.O., in a letter to plaintiff's employer, opined on December 17, 2001, that plaintiff had a "physical disability" which limited her walking, performing manual activities, sitting and standing, and lifting over 15 pounds. This letter states in full as follows:

> "Belinda Eldridge has been under my care and has a physical disability that substantially limits the following activities: 1. Walking; 2. Performing manual tasks, 3. Sitting and standing, 4. Lifting over 15 pounds. Ms. Eldridge is able to work five hours a day, five days per week up to 25 hours per week only."

(Tr. 203.) Plaintiff was then advised by her employer Wingert's Food Center in December, 2001, that they did not have a position meeting her restrictions. These were identified by the employer as follows: limit lifting to 15 pounds, no repetitive work, limit on no squatting,

bending, or lifting, limit on schedule, limit on walking, limit on manual tasks, limits on sitting and standing. (Tr. 202.)

Plaintiff was examined by a state agency physician Michael Simpson, M.D., in May, 2002. She complained of back pain and headaches that required her to take Vicodin and Naprosyn. She stated that she had not been to the ER for the past twelve months for this problem. (Tr. 231.) She had a slightly restricted range of motion in the cervical and lumbar spine on exam but no evidence of radiculopathy. The remainder of the exam was normal. X-rays of the cervical and thoracic spine were taken on the day of the examination. They showed that the cervical spine height and alignment of visualized segments were satisfactory. Disc spaces from C2 to C6 were well-maintained and there was no facetal arthrosis or foraminal encroachment and soft tissues appeared intact. The thoracic spine showed satisfactory vertebral height and alignment, adequate disc spaces, and some anterior end plate spurring at T9-T11. There were no abnormalities affecting the posterior elements or mediastinal stripe. (Tr. 207.) In sum, she identified three areas of concern: her migraine without aura, her back and neck pain, and her history of tachycardia. She had not been to the ER for the headaches for a year, the x-rays did not reveal any abnormalities in the neck and back, her pulse was normal, and previous stress test was negative. (Tr. 232-234.)

Plaintiff had additional epidural steroidal injections for lumbar pain in August, 2002, October 25, 2002, and February 13, 2003. In May, 2003, she underwent a diagnostic laparoscopy for stage II endometriosis of the pelvis. In June, 2003, x-rays confirmed no abnormalities in her lumbar spine.

A residual functional capacity assessment prepared by Dr. Daniel Dolonski, D.O., on May 29, 2002, indicates that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, sit 6 hours, stand 6 hours, and push and pull as required. She could only occasionally climb but otherwise there were no restrictions. (Tr. 237-8.)

At the time of the decision, plaintiff was treating with Dr. S. Hasni, M.D., who in July, 2003, diagnosed carpal tunnel syndrome after plaintiff complained of pain in her right wrist.

### C. Available Jobs

The ALJ carefully considered the evidence including the testimony of the vocational expert who opined that plaintiff's past work was unskilled medium work. The ALJ determined that plaintiff's impairments prevented her from performing that work, but reasonably found that plaintiff could perform a limited range of unskilled light work including work as a visual inspector, information clerk, and surveillance system monitor. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(B). Given plaintiff's medical evidence, the jobs identified fall well within the range of abilities supported by the residual functional capacity assessment.

Approximately 5000 such jobs were found to exist. Plaintiff does not challenge this number as insufficient. There is no medical evidence which would support her inability to

perform the limited range of light work identified. Therefore, the magistrate judge concludes that the defendant's decision is supported by substantial evidence.

Accordingly, it is recommended that judgment be granted for the defendant and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                S/Virginia M. Morgan
                VIRGINIA M. MORGAN
                UNITED STATES MAGISTRATE JUDGE

Dated:  December 14, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 14, 2006, by electronic and/or ordinary mail.

                S/Vee Sims
                Case Manager, (313) 234-5210